UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT CARL GARDNER,

        Plaintiff,

                              Case No. 1:25-cv-1191

v.

                              Honorable Sally J. Berens

MICHAEL BURGESS et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Bassett. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Burgess, Erway, Turner, Larson, Ensing, and Persenaire: Eighth Amendment verbal harassment claims and Fourteenth Amendment procedural due process, substantive due process, and equal protection claims. Plaintiff's Eighth Amendment medical care claims against Defendants Burgess, Erway, Turner, Larson, Ensing, and Persenaire, and Fourteenth Amendment informational privacy claim against Defendant Persenaire remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following Defendants in their personal capacities: Warden Michael Burgess, Assistant Deputy Warden Unknown Erway, Assistant Resident Unit Manager Unknown Turner, Prison Counselor Unknown Larson, Chief Psych Unknown Ensing, Psych Unknown Persenaire, and Grievance Coordinator T. Bassett. (Compl., ECF No. 1, PageID.1–2.)

Plaintiff alleges that he was transferred to "5 bl[oc]k" for possession of a weapon on February 21, 2025. (*Id.*, PageID.3.) On February 24, 2025, Plaintiff told Defendant Persenaire that he was hearing voices and seeing demons, that his medication was not helping, and that he had not eaten or slept in three days. (*Id.*) Defendant Persenaire told Plaintiff that he would be okay and left. (*Id.*) That same day, Plaintiff told Defendants Turner and Larson the same things that he had told Defendant Persenaire and that he felt suicidal, but Defendants Turner and Larson ignored him. (*Id.*) Plaintiff also sent kites to Defendants Erway and Ensing. (*Id.*)

On February 26, 2025, Plaintiff obtained razor blades and cut a long line across his stomach and "tried to pull out [his] guts because [he] thought demons were inside [him]." (*Id.*) He also cut his chest. (*Id.*) When Plaintiff showed his cuts to Defendants Turner and Larson the following day, they just laughed and called Plaintiff "crazy." (*Id.*)

After Plaintiff's February 27, 2025, interaction with Defendants Turner and Larson, Plaintiff tied a sheet around his neck and attempted to choke himself. (*Id.*, PageID.3–4.) Plaintiff blacked out and woke up on the ground. (*Id.*, PageID.4.) Plaintiff told "every nurse" what he had

done and showed them his wounds, but the nurses did nothing. (*Id.*) Plaintiff also sent kites to Defendants Burgess, Erway, and Ensing, but did not receive any response. (*Id.*)

On February 28, 2025, Plaintiff was found guilty of possession of a weapon and was sentenced to 10 days' loss of privileges and detention. (*Id.*, PageID.5.) He "still tried to hang [him]self every day" and complained to "nurses" and Defendants Larson, Turner, Ensing, and Erway about his injuries. (*Id.*) "Nothing was done." (*Id.*)

Upon the conclusion of Plaintiff's detention, on March 10, 2025, Defendants Turner and Larson told Plaintiff that there was "no bed space" in 4-block. (*Id.*) Plaintiff handed them grievances and told them that that he had been completing grievances since February 24, 2025, but had not received a response. (*Id.*) Plaintiff told Defendants Turner and Larson that he was hearing and seeing demons and needed to leave administrative segregation. (*Id.*) They responded that there was no bed space. (*Id.*)

Plaintiff describes "kick[ing] open [his] food slot and refus[ing] to give it back" every day from March 11 to March 14, 2025. (*Id.*) Each time, Plaintiff spoke with non-party Sergeant Janis. (*Id.*) On March 14, 2025, Defendant Larson told Plaintiff that if Plaintiff did not return his food slot, Plaintiff would not be taken to 4-block on Monday. (*Id.*) Plaintiff did as told and never kicked open his food slot again. (*Id.*)

On March 17, 2025, Defendant Persenaire visited Plaintiff in administrative segregation with a non-party officer who was wearing a body camera. (*Id.*, PageID.6.) Plaintiff asked Defendant Persenaire to have the officer put the body camera to sleep, but she refused. (*Id.*) She then proceeded to ask Plaintiff why it was "so hard in prison for gay people like [Plaintiff]" and tell Plaintiff that he had previously been raped. (*Id.*) She also told Plaintiff, "[I]t's probably your skitso [sic] that[']s making you crazy." (*Id.*) The non-party officer laughed, Plaintiff walked away

5

from the cell door, and Defendant Persenaire left. (*Id.*) Plaintiff was transferred to 4-block a few hours later and submitted a grievance. (*Id.*0

After being transferred to 4-block, Plaintiff could not eat, constantly threw up, and barely slept; he lost 45 pounds in less than 90 days. (*Id.*) Plaintiff put in a medical kite and was given a high protein snack bag for 6 months. (*Id.*)

Plaintiff alleges that Defendant Bassett either refused to process or denied Plaintiff's grievances. (*Id.*) Plaintiff sent grievances to Defendant Burgess every day for two weeks but did not receive a response. (*Id.*)

Plaintiff brings claims for violation of his Fourteenth Amendment rights to due process and equal protection. (*Id.*, PageID.7.) He also brings Eighth Amendment claims related to improper medical care and degrading verbal comments, Fourteenth Amendment claims related to Defendant Bassett's failure to process Plaintiff's grievances, and claims related to a violation of his "confidentiality." (*Id.*, PageID.7–8.)[2] Plaintiff seeks monetary relief. (*Id.*, PageID.8.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

---

[2] Because Plaintiff specifically identifies the claims that he intends to bring in this suit, the Court does not construe Plaintiff's complaint to raise any other claims.

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Eighth Amendment Medical Care Claims

Plaintiff alleges that he told Defendants Persenaire, Turner, Larson, Erway, and Ensing that he was hearing voices, seeing demons, that his medication was not working, that he had not eaten or slept, and that he was feeling suicidal. (Compl., ECF No. 1, PageID.3–4.) Defendants ignored Plaintiff, and Plaintiff subsequently cut himself and attempted to choke himself. (*Id.*) Plaintiff also alleges that Defendants Turner and Larson denied Plaintiff medical attention for his cuts and that he sent kites to Defendants Burgess, Erway, and Ensing, but did not receive any responses. (*Id.*,

7

PageID.4.) He states that he "still tried to hang [him]self every day" and complained to "nurses," and Defendants Larson, Turner, Ensing, and Erway about his injuries. (*Id.*) "Nothing was done." (*Id.*)

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's

8

affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardeman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, taking Plaintiff's allegations as true, as is required at this stage, the Court finds that Plaintiff has alleged sufficient facts to state an Eighth Amendment medical care claim against Defendants Persenaire, Turner, Larson, Burgess, Erway, and Ensing.

### B.     Eighth Amendment Verbal Harassment Claims

Plaintiff alleges that Defendants Turner and Larson laughed at him and called him "crazy" when he showed them his cuts. (Compl., ECF No. 1, PageID.3.) Plaintiff also alleges that Defendant Persenaire laughed at Plaintiff after discussing Plaintiff's sexual orientation, the fact that Plaintiff had been raped, and Plaintiff's diagnosis of schizophrenia. (*Id.*, PageID.7.) These allegations do not state an Eighth Amendment claim.

9

Allegations of verbal harassment or threats by prison officials toward an inmate, though unprofessional and inappropriate, do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief" (citing *Ivey*, 832 F.2d at 955)); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that verbal harassment in the form of a threatened sexual assault "was not punishment that violated Miller's constitutional rights" (citing *Ivey*, 832 F.2d at 955)); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."). Therefore, the Court finds that Plaintiff has failed to state an Eighth Amendment claim against Defendants Turner and Larson for laughing at Plaintiff's injuries and against Defendant Persenaire for her March 17, 2025 comments toward Plaintiff.

### C. Fourteenth Amendment Procedural Due Process Claims

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to due process. He claims that Defendant Bassett refused to process Plaintiff's grievances and that Defendant Burgess did not response to Plaintiff's grievances, which were submitted to him every day for two weeks. (Compl., ECF No. 1, PageID.6.) These allegations do not state a Fourteenth Amendment procedural due process claim.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance

procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants Bassett and Burgess did not deprive Plaintiff of due process.

### D.    Fourteenth Amendment Substantive Due Process Claims

To the extent Plaintiff suggests that any of Defendants' actions violated his substantive due process rights, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Plaintiff's allegations, however, fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.

Further, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not

the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to Plaintiff's claims that he was denied medical care, while the Fourteenth Amendment applies to Plaintiff's claims of equal protection and procedural due process. Consequently, any intended substantive due process claims will be dismissed.

### E.     Fourteenth Amendment Equal Protection Claims

Plaintiff alleges that Defendants' actions violated Plaintiff's right to equal protection. He "asserts that LGBTQ+ people have a right to receive treatment for their serious medical and mental health needs." (Compl., ECF No. 1, PageID.7.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, Plaintiff must show that Plaintiff "has been intentionally treated differently from others similarly situated." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

12

Plaintiff's complaint contains no facts or allegations to support an equal protection claim. Plaintiff states only that Plaintiff is gay and otherwise identifies as an LGBTQ+ person. (Compl., ECF No. 1, PageID.6–7.) Plaintiff then goes on to allege in a conclusory fashion that Defendants violated his right to equal protection, implying that Defendants denied him medical treatment because of his status and sexual orientation. (*Id.*, PageID.7.) However, Plaintiff fails to provide the Court with any factual allegations that would support that conclusion.

Plaintiff does not provide the Court with any facts regarding Defendants' treatment of any other prisoners, let alone prisoners similarly situated to Plaintiff in all relevant respects but treated differently. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory, and thus fail to state a claim under section 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's equal protection claim will be dismissed.

### F.   Fourteenth Amendment Privacy Claims

Plaintiff alleges that Defendant Persenaire violated his right to confidentiality by disclosing Plaintiff's sexual orientation, the fact that Plaintiff had been raped, and Plaintiff's diagnosis of schizophrenia. (Compl., ECF No. 1, PageID.7.) Plaintiff cites to *Moore v. Prevo*, 379 F. App'x 425 (6th Cir. 2010) (*id.*), which held that "inmates have a Fourteenth Amendment privacy interest in guarding against disclosure of sensitive medical information from other inmates subject to legitimate penological interests." *Moore*, 379 F. App'x at 428. Accordingly, the Court will construe Plaintiff's complaint as raising a claim for violation of Plaintiff's Fourteenth Amendment informational right to privacy.

> Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600 & n.26 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education.") (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976)). The

> other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id*. at 599, 603–04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists).

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). Plaintiff's claim implicates the latter interest, i.e. the "individual's right to control the nature and extent of information released about that individual," which "has been coined an informational right to privacy." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

The Sixth Circuit has concluded that "the Constitution does not encompass a general right to nondisclosure of private information." *J.P. v. DeSanti*, 653 F.2d 1080, 1087–90 (6th Cir. 1981). Consequently, the constitutional right to informational privacy is limited to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id.* at 1090 (citations omitted). "Only after a fundamental right is identified should the court proceed to the next step of the analysis—the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." *Lambert*, 517 F.3d at 440.

In applying this balance, the Sixth Circuit in *Moore* explained that precedent dictates that inmates have no constitutional right to privacy barring disclosure of an inmate's sensitive medical information—in that case, HIV-positive status—"to *corrections officers*." *Moore*, 379 F. App'x at 427 (citing *Doe v. Wigginton,* 21 F.3d 733, 740 (6th Cir. 1994)) (emphasis in original)). The Court recognized only a Fourteenth Amendment privacy interest in having sensitive medical information kept confidential from other inmates. *Id.* at 428–29. Here, Plaintiff's complaint does not suggest that any other inmates were present at the time that Defendant Persenaire made her statements to

14

the non-party officer. Therefore, in keeping with the foregoing, the Court cannot conclude that the disclosure of Plaintiff's diagnosis of schizophrenia infringed upon Plaintiff's Fourteenth Amendment right to privacy.

However, *Moore* did not address whether disclosure of other sensitive information, including the fact that Plaintiff had been raped, violated the Fourteenth Amendment. In *Bloch*, though outside of the prison context, the Sixth Circuit held "that a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no [penological] purpose is being served." *Bloch*, 156 F.3d at 686. Here, taking Plaintiff's allegations as true, Plaintiff's complaint does not suggest any legitimate penological purpose underlying Defendant Persenaire's disclosure of Plaintiff's history of having been raped. Therefore, while Plaintiff has by no means proven his claims, the Court will not dismiss Plaintiff's Fourteenth Amendment privacy on screening.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendant Bassett will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Burgess, Erway, Turner, Larson, Ensing, and Persenaire: Eighth Amendment verbal harassment claims, and Fourteenth Amendment procedural due process, substantive due process, and equal protection claims. Plaintiff's Eighth Amendment medical care claims against Defendants Burgess, Erway, Turner, Larson, Ensing, and Persenaire, and Fourteenth Amendment informational privacy claim against Defendant Persenaire remain in the case.

15

An order consistent with this opinion will be entered.

Dated:  November 14, 2025                    /s/ Sally J. Berens
                                             SALLY J. BERENS
                                             United States Magistrate Judge